Richard MATTHEWS, Plaintiff,

v.

LeBOEUF, LAMB, GREENE
& MacRAE, Defendant.

No. 94 Civ. 1315 (SS).

United States District Court,
S.D. New York.

Sept. 14, 1995.

The Law Office of Frederick R. Dettmer, New York City (Frederick R. Dettmer, Karen M. Streisfeld, of counsel), for plaintiff.

LeBoeuf, Lamb, Greene & MacRae, New York City (John G. Nicolich, of counsel), defendant pro se.

### OPINION AND ORDER

SOTOMAYOR, District Judge.

Defendant LeBoeuf, Lamb, Greene & MacRae ("LeBoeuf") moves to disqualify counsel for plaintiff Richard Matthews. Plaintiff's attorneys Frederick R. Dettmer and Karen M. Streisfeld worked formerly as a partner and an associate, respectively, at LeBoeuf. For the reasons discussed below and on the

record of oral argument held on June 23, 1995, I deny defendant's motion.

## BACKGROUND

Plaintiff headed LeBoeuf's Managing Clerk's Office from November 1990 through December 1992. In March 1992, LeBoeuf discontinued paying Matthews overtime pay and instead compensated him at a flat rate. In this action, Matthews is asserting claims for unpaid overtime based on alleged violations of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 et seq. ("FLSA"), unjust enrichment, and breach of contract.

Matthews is represented in this action by attorneys Dettmer and Streisfeld, of the law office of Frederick R. Dettmer. In 1992, at the time of LeBoeuf's alleged wrongdoing, Dettmer and Streisfeld worked as attorneys at LeBoeuf. LeBoeuf claims that plaintiff's counsel should be disqualified because their representation of Matthews results in various conflicts of interest and violates codes of legal ethics.

■ On June 23, 1995, I held oral argument on defendant's motion and rejected two of the four arguments raised by LeBoeuf for disqualification. I hereby incorporate by reference my reasons for rejecting those arguments, which reasons appear on the record of the June 23rd conference. In essence I held that defendant's first ground, that Dettmer and Streisfeld's representation would violate the duty of zealous representation as well as the duty to avoid even the appearance of impropriety, was subsumed by LeBoeuf's other three grounds and would not stand alone as a basis for disqualification. I rejected LeBoeuf's second argument about the possibility of a financial conflict of interest between plaintiff and Dettmer because Dettmer's share, as a former partner, of any liability imposed upon LeBoeuf would be de minimis at best. Moreover, Disciplinary Rule ("D.R.") 5–101(a) of the New York Code and ABA Code [1] view fully disclosed financial conflicts as waiveable, and Matthews has been fully informed of the potential conflict

and has chosen to proceed with the representation.

Regarding defendant's remaining arguments for counsel's disqualification, I also ruled that LeBoeuf had not offered sufficient proof to support its third argument, that plaintiff's counsel would be witnesses on material issues in the litigation or that they would testify in a manner prejudicial to their client, and invited further proof on this claim. I further requested supplemental briefs for defendant's fourth argument, that Dettmer and Streisfeld would violate their fiduciary duty to their former employer in their role as counsel for plaintiff. The parties submitted supplemental memoranda of law and supporting affidavits on August 18, 1995; I heard a second oral argument on August 25, 1995.

## DISCUSSION

### Disqualification Standard

■ As I noted at the June 23 oral argument, the Second Circuit generally disfavors disqualification and "has adopted 'a restrained approach' ... which calls for disqualification only upon a finding that the presence of a particular counsel will taint the trial by affecting his or her presentation of a case.... Where a threat of tainting the trial does not exist, therefore, the litigation should proceed, the remedy for unethical conduct lying in the disciplinary machinery of the state and federal bar." *Bottaro v. Hatton Assocs.*, 680 F.2d 895, 896–97 (2d Cir.1982) (citations omitted). This test is designed to prevent the "wholesale filings of motions for tactical reasons." *Id.* at 896. The *Bottaro* court expressly rejected the less rigorous standard for disqualification that "any doubt should be resolved in favor of disqualification." *Id.*

■ In order to protect a client's right to freely choose his or her counsel, the Second Circuit requires the movant in a motion for disqualification, who bears the burden of proof, to meet a "high standard of proof" before a lawyer is disqualified. *Evans v.*

1. The New York State Code of Professional Responsibility is identical to the American Bar Association Code of Responsibility.

*Artek Sys. Corp.,* 715 F.2d 788, 791 (2d Cir. 1983) (citations omitted); *see Clark v. Bank of New York,* 801 F.Supp. 1182, 1197 (S.D.N.Y.1992) (Mukasey, J.).

■ A motion for disqualification of counsel is a matter addressed to the sound discretion of the trial court. *Brooks v. Bates,* No. 89 Civ. 44768, 1994 WL 121851, 1994 U.S.Dist. LEXIS 4502, at **5–6 (S.D.N.Y. Apr. 4, 1994) (Sotomayor, J.) (citing *Funds of Funds, Ltd. v. Arthur Andersen & Co.,* 567 F.2d 225 (2d Cir.1977)).

*Defendant's Third Ground: Counsel as Adverse Witnesses*

■ LeBoeuf argued that it will call Dettmer and Streisfeld as fact witnesses during trial, which necessitates their withdrawal as plaintiff's counsel. Disciplinary Rule 5–102(B) calls for the withdrawal of an attorney only when "it is apparent that the testimony may be prejudicial to the client." The moving party "bears the burden of demonstrating how and as to what issues in the case the prejudice may occur and that the likelihood of prejudice occurring is substantial." *Rice v. Baron,* 456 F.Supp. 1361, 1371 (S.D.N.Y. 1978) (citations omitted). I ruled at oral argument on June 23, and I incorporate that ruling by reference, that LeBoeuf had not met its burden of proof that any information held by Dettmer or Streisfeld was either material or sufficiently adverse to their client's interest to justify disqualification.

At the time of the June 23 oral argument, LeBoeuf had not deposed Streisfeld, nor had she submitted an affidavit; therefore, LeBoeuf had not had the full opportunity to offer proof as to the potential content of her testimony. I therefore allowed LeBoeuf to depose Streisfeld before submitting its supplemental papers in order to give the firm an opportunity to present me with proof of her testimony so that I could reconsider this ground for disqualification. Tr. at 22–23.

Similarly, I ruled that LeBoeuf had not met its burden of proving that Dettmer would be an adverse witness to his client. LeBoeuf argued that Dettmer's testimony would necessarily be prejudicial to Matthews because it intended to elicit testimony that Dettmer had written off 3.5 hours of Matthews' time on a client bill. Dettmer denied that his testimony would be prejudicial to Matthews, and at oral argument, I agreed with Dettmer that a write-off of such a small number of hours in the context of a substantial bill was not necessarily prejudicial information. I invited LeBoeuf to submit further affidavits explaining what testimony it would elicit from Dettmer that would be adverse to Matthews and would mandate Dettmer's disqualification and how a 3.5 hour write-off of time would be considered a material element of proof in LeBoeuf's defense.

■ In its Supplemental Memorandum of Law and supporting affidavits, however, LeBoeuf proffered no additional evidence tending to show that testimony by either Dettmer or Streisfeld would be prejudicial to Matthews. I need only address, then, the possibility that even if not called to the stand, Dettmer and Streisfeld's representation of plaintiff would hurt defendant at trial because plaintiff's counsel could be unsworn witnesses. When an attorney has independent knowledge of the events at trial, there is a possibility that the attorney's "role as an advocate may give his [or her] client an unfair advantage, because the attorney can subtly impart to the jury his [or her] firsthand knowledge of the events without having to swear an oath or be subject to cross examination." *U.S. v. Locascio,* 6 F.3d 924, 933 (2d Cir.1993).

I am mindful of the potential dangers of unsworn witnesses in any action; that is, plaintiff's counsel could subtly suggest to the jury, through cross-examination of defendant's witnesses or during summation, that because of their own past employment relationship with LeBoeuf they have superior knowledge about certain events. Defendant has not, however, identified particular events pertinent to this litigation of which Dettmer and Streisfeld have knowledge. Moreover, I ruled at the June 23 conference that if I were to deny defendant's motion for disqualification, the jury would not be allowed to learn that Dettmer and Streisfeld formerly worked for defendant, unless defendant introduced the issue. Dettmer, Streisfeld, and Matthews have submitted supplemental affidavits

stating that they will not reveal at trial the lawyers' former association with LeBoeuf.

■ Given that LeBoeuf has not met its burden of showing that Dettmer and Streisfeld will give testimony adverse to their client and that the jury will not know of their past employment at LeBoeuf, I decline to disqualify plaintiff's counsel on the ground that Dettmer and Streisfeld will be either actual or unsworn witnesses at trial.

### Defendant's Fourth Ground: Counsel's Fiduciary Duty

LeBoeuf's final ground for disqualification centers on plaintiff's counsel's fiduciary duty to their former firm. LeBoeuf asserts that Dettmer and Streisfeld possess information that they learned at LeBoeuf upon which they will rely during the course of this litigation. The information concerns both the internal workings of the firm and events underlying this action. LeBoeuf argues that the attorneys cannot use this information because 1) the information is confidential and 2) even if the information is not confidential, the attorneys' fiduciary duty prevent them from using information that they learned at the firm even if that information is available to others, for example, through discovery.

■ LeBoeuf is correct in its argument that former employees owe a continuing duty to refrain from revealing an employer's trade secrets or other confidential information. *See Great Lakes Carbon Corp. v. Koch Indus., Inc.,* 497 F.Supp. 462, 469–70 (S.D.N.Y. 1980) (Pollack, J.). LeBoeuf is mistaken, however, in the second prong of its argument, that Dettmer and Streisfeld are prohibited even from using information from the firm that is not confidential. Their argument stems from LeBoeuf's reliance on two Second Circuit cases, *Franke v. Wiltschek,* 209 F.2d 493 (2d Cir.1953) and *ABKCO Music, Inc. v. Harrisongs Music. Ltd.,* 722 F.2d 988 (2d Cir.1983). These cases are inapposite, however, as a finding of bad faith in securing the alleged private information was critical to their outcome.

In *Franke,* defendants, in the guise of salesmen, tricked a manufacturer into revealing to them his trade secrets and preceded to make a similar product and undersell the manufacturer. The district court granted an injunction permanently prohibiting defendants from selling their product. The Second Circuit affirmed, and in response to defendants' argument that they should be allowed to sell the product because the technology involved was publicly available, the court said, "The essence of their action is not infringement, but breach of faith." *Franke,* 209 F.2d at 495. *Franke* does not, as defendant contends, stand for the proposition that where agents gain nonconfidential information from a principal via their normal relationship, the agents incur a duty not to use it to the principal's detriment after the agency relationship ends, and even though the agents could have gained the knowledge from public sources. Because Dettmer and Streisfeld did not obtain any of their general knowledge of the firm as a result of bad faith, *Franke* does not bar them from representing Matthews.

Likewise, LeBoeuf's reliance on *ABKCO Music* is misplaced. As the Second Circuit noted, the facts in *ABKCO* were "not only novel, but unique." 732 F.2d at 995. The court did not allow Allen Klein, the former business manager of the Beatles, to profit from his purchase of the stock of a company to whom George Harrison lost a copyright infringement case because Klein had initially participated in settlement discussions in the case on Harrison's side and subsequently had covertly furnished confidential royalty information to Harrison's adversary. The court held that Klein had breached his fiduciary duty to Harrison; the decision turned on various acts committed in bad faith by Klein. I find no bad faith on the part of Dettmer and Streisfeld in their employment relationship with LeBoeuf or their present representation of Matthews, and the holding in *ABKCO* is therefore inapplicable to the case before me.

Because I reject the prong of LeBoeuf's argument which rests upon the use of nonconfidential information, I need address only whether Dettmer and Streisfeld possess confidential information learned at LeBoeuf that they could use to the firm's detriment, and thereby breach their fiduciary duty. I fail to

see why the information LeBoeuf puts forward as reasons for counsel's disqualification is confidential. For example, defendant argues that Dettmer and Streisfeld may not litigate this action due to their knowledge of the internal practices of LeBoeuf. Specifically, defendant contends that Dettmer and Streisfeld's knowledge about the duties and responsibilities of the Managing Clerk's Office, Streisfeld's familiarity with LeBoeuf's settlement practices, and Dettmer's knowledge of the firm's financial reports warrant their disqualification. I disagree. Dettmer and Streisfeld's knowledge of the duties and responsibilities of the Managing Clerk's Office is not confidential information—most large law firms have similar offices, and Matthews himself knows the duties and responsibilities of the Managing Clerk's Office.[2] Furthermore, I do not understand how Streisfeld's participation in settlement negotiations for two or three LeBoeuf matters unrelated to this action could have given her any information relevant to this action. A similar argument was addressed and persuasively rejected in *Vestron, Inc. v. National Geographic Society*, 750 F.Supp. 586 (S.D.N.Y.1990), where defendant moved to disqualify a law firm from representing plaintiff because the firm had received "sensitive and confidential information concerning ... National Geographic's approach to and strategy in litigation matters...." *Id.* at 595. The *Vestron* court held that an understanding of "general litigation thinking" cannot form the basis for a disqualification motion. *Id.* Finally, I fail to see why Dettmer's knowledge about LeBoeuf's financial data would give him an unfair advantage.[3] Any other attorney who might represent Matthews could obtain through discovery any financial information relevant to this action, such as the firm's realization rates and Matthews' hourly rate.

Potentially more persuasive was LeBoeuf's argument that Dettmer and Streisfeld must be disqualified because while employed by LeBoeuf, they learned confidential information about this case itself. Defendant, however, failed to meet its burden of proving that the attorneys received any relevant information about the events giving rise to this action. LeBoeuf found it significant, for example, that Streisfeld had conversations with three LeBoeuf employees concerning Matthews' job performance. I, however, consider such conversations mere gossip, and LeBoeuf has not demonstrated how these conversations are material to this action. Additionally, Lawrence Pollack, a LeBoeuf partner, contended in an affirmation that Dettmer was privy to discussions, "both in and out of partnership meetings," about "Matthews and the Managing Clerk's Office." Aff. Lawrence W. Pollack at 2. Pollack further alleged that Dettmer had complained to Pollack "about Matthews' inefficient administration of the Managing Clerk's Office." *Id.* Dettmer denies participating in or being privy to such discussions. Aff. Frederick R. Dettmer at 2. Moreover, Dettmer states that he complained to Pollack about "certain members of the managing clerk's office *other than Matthews....* [and was] quite explicit in stating that Richard Matthews was *not* one of the individuals I was concerned about." *Id.* at 3. I invited defendant to submit further affidavits regarding the precise subject matter of the discussions and how those conversations were material to the issues to be addressed in this litigation, but defendant failed to do so. I therefore deem this objection waived, and find that defendant has not adequately shown that Dettmer and Streisfeld possess confidential information about LeBoeuf or this action, the use of which would breach their fiduciary duty to the firm, warranting their disqualification from this action.

2. Moreover, neither Dettmer nor Streisfeld supervised Matthews or the Managing Clerk's Office. In fact, other than one incident in which Dettmer wrote off 3.5 hours of Matthew's work, defendant has not pointed to any continuing or regular supervisory functions of Dettmer or Streisfeld over Matthews.

3. Dettmer affirms that he has not utilized or reviewed any financial information or confidential materials which he received as a LeBoeuf partner in connection with this lawsuit. Supplemental Aff. of Frederick R. Dettmer at 1–2. He agrees to refrain from reviewing such materials for any purpose relating to this litigation. *Id.* at 2.

32

Because I find that LeBoeuf did not meet its burden of demonstrating that Dettmer and Streisfeld would be adverse witnesses to their client, and because I do not find that either attorney will breach any fiduciary duty to LeBoeuf by representing Matthews in this litigation, I deny defendant's motion to disqualify counsel.

### ORDER

I direct the Clerk of the Court to enter judgment denying defendant's motion to disqualify counsel for the reasons set forth above and on the record of oral argument held on June 23, 1995.

**SO ORDERED.**