MIROGLIO, S.P.A., Petitioner,

v.

MORGAN FABRICS CORPORATION, R & M Industries, Inc., and Costco Wholesale Corporation, Respondents.

No. 04 Civ. 5656PKC.

United States District Court, S.D. New York.

Oct. 14, 2004.

Richard S. Taffet, Bingham McCutchen, L.L.P., New York City, for Plaintiff.

Eathan Horwitz, Goodwin Procter LLP, New York City, for Respondents.

## MEMORANDUM AND ORDER

CASTEL, District Judge.

Defendant Morgan Fabrics Corporation ("Morgan") moves to disqualify Richard Taffet and Bingham McCutchen LLP from representing Miroglio, s.p.a. ("Miroglio") in this action based upon Taffet's prior representation of Morgan. For the reasons set forth below, I grant the motion.

*Background*

Morgan manufacturers and distributes fabrics used in connection with home furnishing products. Miroglio manufacturers and produces (but apparently does not distribute) home furnishing and apparel fabrics. Both Morgan and Miroglio claim ownership in a particular fabric design entitled "Paisley". Morgan acknowledges that Miroglio provided it with a paisley design to which Morgan added color combinations providing, in its view, sufficient originality for it to be capable of being protected by copyright.

It is not contested that, in calendar years 2002 and 2003, Taffet represented Morgan on three different copyright infringement matters relating to fabric designs. Morgan has submitted the declaration of Michael Gittleson, its Chief Executive Officer, in which he declares under penalty of perjury that he sought and obtained legal advice from Taffet regarding the paisley design at issue in this litigation. (Gittleson Decl. ¶¶ 11–14) Taffet responds asserting that "I do not believe this to be true ...." citing the fact that he has no recollection of having done so and his belief that he would not have given the advice that Mr. Gittleson cites him as having given. (Taffet Affidavit ¶ 14)

On May 27, 2004, a director of a division of Miroglio wrote to David Young of Morgan regarding the paisley design, and sought certain information from Morgan. (Young Affidavit ¶ 9) Thereafter, according to Young, Taffet called and informed Young that certain products on sale by a retailer were infringing the copyright. (Young Affidavit ¶ 10) Taffet asked for a copy of the copyright registration and Young complied "[b]ased on my belief that Mr. Taffet was calling as our [i.e. Morgan's] attorney...." (Young Affidavit ¶ 10) Taffet acknowledges the call but asserts that he identified himself as calling on behalf of Miroglio. (Taffet Affidavit ¶ 17) Subsequently, on June 21, 2004, plaintiff's divisional director wrote to Young noting that he had had a "common friend" [a reference to Taffet] call to obtain the copyright registration, and closed the letter by claiming that Miroglio owns the design and that Taffet would be filing suit against third-party infringers, a distributor and retailer, for "your sake and ours." (Young Affidavit Ex. B) Less than a month later, on July 20, 2004, Miroglio, represented by Taffet, filed suit against the distributor (R & M Industries, Inc.) and retailer (Costco Wholesale Corporation) but the suit named Morgan, as well. Morgan raised the disqualification issue in

its answer and counterclaim filed August 24, 2004. Following a pre-motion conference, Morgan formally moved to disqualify Taffet and his firm.

At the time of the 2002 and 2003 representations, Taffet was a partner in the firm of Thelen Reid & Priest LLP. Since February 23, 2004 he has been a partner in the firm of Bingham McCutchen LLP.

*Legal Standards*

■■■ The legal principles governing the motion are not in dispute. *See Evans v. Artek Systems Corp.,* 715 F.2d 788, 791 (2d Cir.1983); *Government of India v. Cook Industries, Inc.,* 569 F.2d 737, 739 (2d Cir.1978); *Emle Industries, Inc. v. Patentex, Inc.,* 478 F.2d 562 (2d Cir.1973). *See also R–T Leasing Corp. v. Ethyl Corp.,* 484 F.Supp. 950 (S.D.N.Y.1979), *aff'd mem.,* 633 F.2d 206 (2d Cir.1980) (table); *T.C. Theatre Corp. v. Warner Bros. Pictures,* 113 F.Supp. 265 (S.D.N.Y. 1953) (Weinfeld, J.). Generally, a client may be represented by counsel of his own choosing. *Government of India,* 569 F.2d at 739. A district court should be mindful that a disqualification motion might be used as tactical device to delay a case, and impose upon an adversary the costs of defending an issue collateral to the merits of a case. *Armstrong v. McAlpin,* 625 F.2d 433, 437 (2d Cir.1980) (en banc), *vacated on other grounds,* 449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981). The rule governing disqualification of an attorney based upon a former representation of an adverse client arises out of the ongoing duty to preserve client confidences, even after the attorney-client relationship has ended. *See, e.g., Bd. of Ed. Of City of New York v. Nyquist,* 590 F.2d 1241, 1246 (2d Cir.1979). The important interests that

underlie the attorney-client privilege are eroded if counsel is permitted to proceed with a case knowing the protected confidences of the opposing client. *Id.* This, in turn, may undermine the fairness of the proceeding.

■■■ Judge Weinfeld's test for determining whether an attorney's former representation of a client requires disqualification has been adopted by the Second Circuit. *See Emle Industries, Inc. v. Patentex, Inc.,* 478 F.2d at 570 (quoting *T.C. Theatre Corp.,* 113 F.Supp. at 268–269). The standard does not require identity of issues but rather a substantial relationship between the matters at issue in the prior and present adverse representation. In Judge Weinfeld's words:

> I hold that the former client need show no more than that the matters embraced within the pending suit wherein his former attorney appears on behalf of his adversary are substantially related to the matters or cause of action wherein the attorney previously represented him, the former client. The Court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation. It will not inquire into their nature and extent. Only in this manner can the lawyer's duty of absolute fidelity be enforced and the spirit of the rule relating to privileged communications be maintained.

■■■ The law in this Circuit has evolved and the presumption that the attorney was likely to have had access to client confidences may be rebutted; the issue remains that of access rather than the content of confidential communications.[1] The

1. *See Ullrich v. Hearst Corp.,* 809 F.Supp. 229 (S.D.N.Y.1992), citing to (then draft) now adopted *Restatement of the Law Governing Lawyers* § 132, comment d(ii) at p. 380. Then–District Judge Leval expressed concern

that permitting an attorney to rebut the presumption of access to confidential information risked compromising the information and noted that "the client ordinarily does not

standard, as it has evolved, was summarized in *Evans,* 715 F.2d at 791, and has three elements:

(1) the moving party is a former client of the adverse party's counsel;

(2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and

(3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

Satisfaction of the first element is conceded by plaintiff's counsel. The second two elements are in dispute. If believed, the declarations of Messrs. Young and Gittleson would satisfy the second and third prongs because they assert that they sought and obtained legal advise from Taffet on the actual fabric design at issue, including the ability to obtain a valid copyright. Because Taffet disputes these facts, ordinarily I would hold an evidentiary hearing to resolve the disputed issues. But I need not do so here because the essential facts are not disputed as to the other fabric copyright representations of Morgan by Taffet, and I conclude that there is a substantial relationship between those representations and the matters at issue in this suit and the presumption of access to confidential information has not been rebutted.

 The three copyright issues on which Taffet recently represented Morgan related specifically to fabric designs. Taffet represented Morgan in 2002 on a claim in which Morgan was accused of infringing a fabric design copyright belonging to the Weave Corporation. In early 2003, he represented Morgan on a fabric design copyright against Melrose Home Collections, Inc. (the "Melrose Matter"). Later, in 2003 he represented Morgan on a potential claim against New Era Decorative Fabrics, Inc. for infringing one of Morgan' fabric designs. These representations are substantially related to the issues in the present litigation. In order to competently represent Morgan on these issues, a reasonable attorney would be expected to acquire a minimum base of knowledge about how Morgan goes about creating designs. The degree of originality required before a fabric design becomes copyrightable and the extent of copying of a fabric design that constitutes infringement were questions within the scope of the prior representation and are issues that are likely to arise in this litigation.[2]

The matters were, indeed, brief and small, but they were more than *de minimis.* That the prior work for Morgan resulted in only a few thousand dollars in billings to Taffet's then firm is beside the point.

In *Ullrich,* the lawyer had represented the corporation both as staff attorney and outside counsel on numerous labor and employment issues. 809 F.Supp. at 230–31. When his relationship with the corporation ended, he began to represent three former employees on claims against the corporation. *Id.* at 232. There was no

---

keep meticulous notes of every confidence revealed." 809 F.Supp. at 234 n. 3.

**2.** The issue of the required degree of originality was recently discussed in *Mattel, Inc. v. Goldberger Doll Mfg. Co.,* 365 F.3d 133, 135 (2d Cir.2004) (citing *Alfred Bell & Co. v. Catalda Fine Arts,* 191 F.2d 99, 102–03 (2d Cir. 1951) ("All that is needed … is that the author contributed something more than a merely trivial variation, something recognizably his own. Originality in this context means little more than a prohibition of actual copying. No matter how poor artistically the author's addition, it is enough if it be his own.")). I express no view on any issue related to the merits of this action.

claim that, while an attorney for the corporation, he performed work relating to these particular employees. *Id.* at 233. Nevertheless, Judge Leval concluded that the attorney was disqualified because he likely acquired general, confidential information regarding the employment practices of the corporation. *Id.* at 234–35.

True, Taffet's work for Morgan was of a much shorter duration than the attorney in *Ullrich.* But just as the attorney in *Ullrich* likely acquired information bearing on the employer's intent and state of mind towards employees in general, the same may be said of Taffet's recent work for Morgan that brought him into direct contact with its CEO. Taffet's complaint against Morgan alleges that it acted "knowingly and willfully" in infringing Miroglio's rights. (Complaint ¶ 11) His prior work for Morgan is likely to have given him privileged insights into Morgan's state of mind. For example, on the Melrose Matter, Taffet billed 1.2 hours for telephone conversations with Morgan's CEO, thus, demonstrating access to privileged information. At a minimum, Taffet's prior representation of Morgan on fabric design copyright issues is substantially related to his claim for an increase in statutory damages on account of Morgan's alleged knowing and willful infringements on Miroglio's alleged fabric design. 17 U.S.C. § 504(c)(2).

 Plaintiff argues that, even if Taffet is personally disqualified, the law firm of which he is presently a partner ought not be. This is not a case where an ethical screen was "established from the first moment the conflicted attorney transferred to the firm or, at a minimum, when the firm first received actual notice of the conflict." *See Mitchell v. Metropolitan Life Insurance Co.,* 2002 WL 441194, at *9 (S.D.N.Y. Mar. 21, 2002). Here, the same law firm partner has had direct personal involvement in the present and former represen-

tation. It was Taffet who made the certification pursuant to Rule 11, Fed.R.Civ.P., on Miroglio's suit against Morgan. There is no suggestion that a screen was implemented when Morgan first raised the issue. The facts presented provide an insufficient basis to depart from the principles of imputation of a partner's disqualifying conflict to his law firm. *See Fund of Funds, Ltd. v. Arthur Andersen & Co.,* 567 F.2d 225, 228 n. 10 (2d Cir.1977); *see also Restatement of the Law Governing Lawyers* § 123. *Cf.* N.Y. Disciplinary Rule 5–105(D), 22 NYCRR § 1200.24(d).

The motion to disqualify Richard Taffet and the firm of Bingham McCutchen LLP is granted.

SO ORDERED.