Raymond J. EDWARDS, Plaintiff,

v.

GOULD PAPER CORPORATION LONG TERM DISABILITY PLAN, Gould Paper Corporation, as Plan Administrator and Continental Casualty Company, Defendants.

No. CV 04–2818.

United States District Court, E.D. New York.

Jan. 18, 2005.

Binder & Binder, P.C., By John W. De-haan, Esq., Ronkonkoma, NY, for Plaintiff.

Mcelroy, Deutsch, Mulvaney & Carpenter, LLP, By Randi F. Knepper, Esq., Morristown, NJ, for Defendant Continental Casualty Company.

Epstein Becker & Green, P.C., By John Houston Pope, Esq., New York, NY, for Defendants Gould Paper Corporation Long Term Disability Plan.

**1.** At the commencement of this litigation, counsel of record for Continental was Randi F. Knepper of the law firm of DelMauro, Digiaimo & Knepper. While attorney Knep-

## MEMORANDUM AND ORDER

WEXLER, District Judge.

This action concerns a dispute between Plaintiff and Defendants in connection with Plaintiff's alleged right to long term disability insurance benefits. Presently before the court is the motion of Defendant Continental Casualty Company ("Continental") to disqualify Plaintiff's counsel from further representation of Plaintiff in this matter. For the reasons set forth below, the motion is granted.

## BACKGROUND

### I.  The Parties' Counsel

Plaintiff is represented by the law firm of Binder and Binder, P.C. ("the Binder Firm"). Attorney Peter J. Heck ("Heck") is currently associated with the Binder Firm. Continental is represented by the firm of McElroy, Deutsch, Mulvaney & Carpenter, LLP.[1]

Prior to his association with the Binder Firm, Heck was a partner at the firm of DelMauro, Digiaimo & Knepper (the "DelMauro Firm"). Heck was an associate with the DelMauro Firm beginning in February of 1998 and became a partner in July of 2002. Continental asserts that Heck remained at the DelMauro Firm until August 13, 2004. Although Heck's affidavit submitted in opposition to this motion disputes the exact date of his departure, he has not supplied the court with the precise date upon which he left the DelMauro Firm for the Binder Firm. Suffice it to say, however, that Heck was employed by the DelMauro firm until in August of 2004 and directly thereafter became associated with the Binder Firm.

per remains counsel of record, the name of the firm representing Continental is currently stated to be the firm of McElroy, Deutsch, Mulvaney & Carpenter, LLP.

## II. Attorney Heck's Prior Representation of Continental

While at the DelMauro Firm, Heck represented Continental. While Heck disputes the exact nature of his representation of Continental, there are certain facts concerning DelMauro Firm practices that have not been properly disputed. First, there is no question but that Heck represented Continental on at least sixteen different litigations while at the DelMauro Firm. It is also without real dispute that the vast majority of those cases involved claims for benefits under insurance plans administered pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA").

Continental has submitted the attorney affidavit of Randi Knepper ("Knepper") detailing the nature and office practices of the DelMauro Firm. First, the DelMauro Firm is relatively small, consisting of between four and eight attorneys during Heck's tenure. The firm is described as a boutique firm specializing in the representation of life, health and disability insurance claims, including those claims involving application of ERISA. The DelMauro Firm is stated to utilize a networked computer system which allows all attorneys access to all communications sent by the firm to its clients. Litigation files are maintained in a central area with access provided to all employees, including those not working on the particular case to which the file pertains. The DelMauro Firm has adopted the practice of distributing blind carbon copies of all correspondence to all attorneys at the end of each day. According to Knepper, this practice allows attorneys to share thoughts and experiences and apprises attorneys of the positions that the firm is taking on all matters.

The Knepper affidavit states that the DelMauro Firm was retained in connection with this case on July 27, 2004, while Heck was still a partner at the firm. It is further stated that, in accord with the firm practice described above, Heck received copies of all correspondence sent to Continental prior to his departure from the firm. It is not stated whether any of that correspondence contained confidential information concerning this matter.

Also submitted in support of Continental's motion is the affidavit of Sarah Knipling, Esq., ("Knipling") an in-house attorney for Hartford Life and Accident Company, Continental's parent company. The Knipling affidavit states that the DelMauro Firm and, in particular, Heck, had been retained to represent Continental on multiple occasions. Knipling further attests to having sought legal advice from Heck on numerous occasions in between 1999 and August of 2004. She states that she has had "candid, open and honest conversations with Mr. Heck relying on the fact that any such conversations were required to be maintained as attorney/client privileged communications." Specifically, Knipling states that she has communicated with Heck regarding the strengths and weaknesses of Continental's litigation, the policies and procedures of Continental and the company's strategies with respect to litigation and settlement.

Knipling states that because of his relationship with the DelMauro Firm, Heck knows how Continental analyzes cases and what it seeks to obtain in negotiating settlements. She further states that Heck has had the opportunity to communicate freely with claims representatives and to prepare those individuals as witnesses. Knipling concludes that the sanctity of the attorney/client privilege and the open communication that it fosters cannot be maintained if the attorney who represents Continental one day may properly become their adversary "the very next day."

In opposition to the motion, Heck has submitted an affidavit in which he takes Continental to great task for failing to identify any specific client confidences entrusted to Heck while a partner at the DelMauro Firm. Heck denies having obtained any confidential information pertaining to this litigation. He also makes the broad assertion that he is not in possession of any confidential information that could be used against Continental in "any other future lawsuit." He further asserts that he has not shared any of these "nonexistent confidences" with any member of the Binder Firm. Heck attributes his expertise in the field of disability law to six years of hard work at the DelMauro Firm and not to "shared attorney-client or work privileged communications provided by in-house counsel or other representatives of Continental."

While Heck does not appear to take issue with any alleged access that he might have had to client files while at the DelMauro Firm, he denies that he ever reviewed those files. Heck states that during the several years prior to his departure from the DelMauro Firm, it was his specific practice not to review copies of correspondence sent to him regarding cases being litigated by other attorneys at the firm. Instead, he asserts, these documents were disregarded by his secretary who would not place them on Heck's desk. Finally, Heck states that since his current practice is based at the Binder Firm's New Jersey office, and this matter is being litigated from the firm's Long Island office, he can, if deemed necessary by the court, be effectively shielded from this litigation.

With this factual background in mind the court turns to consider the relevant legal standards and the merits of the motion.

## DISCUSSION

### I. *Legal Principles*

■ The standards for the granting of a motion to disqualify counsel are well settled. An attorney will be disqualified from representing a client where: (1) the party seeking disqualification is a former client of the attorney sought to be disqualified; (2) there exists a substantial relationship between the subject matter of the pending case and counsel's prior representation of the client, and (3) the attorney sought to be disqualified had access to, or was likely to have access to relevant privileged information in the course of his prior representation of the moving client. *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983); *see Guerrilla Girls, Inc. v. Kaz*, 2004 WL 2238510 * 1 (S.D.N.Y.2004); *Arifi v. de Transport du Cocher, Inc.*, 290 F.Supp.2d 344, 349 (E.D.N.Y.2003).[2]

■ Because disqualification interferes with a party's right to chose counsel, motions to disqualify are subject to a high burden of proof. *Guerrilla Girls*, 2004 WL 2238510 * 1; *Arifi*, 290 F.Supp.2d at 349. The importance of preserving client confidence, however, requires that all doubts be resolved in favor of disqualification. *Id.*; *see also Miroglio, s.p.a. v. Morgan Fabrics Corp.*, 340 F.Supp.2d 510, 512 (S.D.N.Y. 2004).

**2.** Plaintiff's counsel takes issue with Continental's reliance on cases applying the New York State Rules of Professional Responsibility (the "New York Rules"). While the court is aware that federal law governs this matter, it is equally clear that the New York Rules, as well as the ABA Rules of Professional Conduct and the ABA Model Code of Professional Responsibility provide important guidance. *See Blue Planet Software, Inc. v. Games Internat'l., LLC*, 331 F.Supp.2d 273, 275 (S.D.N.Y. 2004).

## II. *The Motion to Disqualify Heck is Granted*

There is no dispute that Continental was a client of Heck and his firm prior to the time when Heck jointed the Binder Firm. Thus, the first prong of the test for disqualification—that the party seeking disqualification is a former client of the attorney sought to be disqualified has been met.

As to the second prong, *i.e.*, whether there exists a substantial relationship between the matters in this case and those at issue with respect to the prior representation, the court notes that there need not be an identity of issues. *Miroglio*, 340 F.Supp.2d at 512. The court is aware that the specific facts at issue in litigation involving the right to collect benefits are case specific. Indeed, if this were a case where Heck had represented Continental with respect to a limited number of claims, the court might hold that this cases bears no substantial relationship to the prior representation. The nature of Heck's representation of Continental, however, coupled with the temporal aspect of this case, as discussed below, requires a different result.

As the description above makes clear, Heck's representation of Continental was extensive, lasting several years. During that time, Heck had full access to Continental personnel, including claims representatives. Additionally, Heck gained intimate knowledge of company procedures and policies regarding the payment and settlement of disability claims. As such, Heck's role with respect to Continental was more akin to that of in-house counsel than that of litigation counsel engaged to represent the company on a discreet matter. While such a relationship does not require automatic disqualification in all future cases, the court must consider carefully whether Heck gained such "sensitive information concerning matters in which the legal department represented the organization that is material to the subsequent representation as to be disqualified." *Lott v. Morgan Stanley Dean Witter & Co.*, 2004 WL 2980193 *3 (S.D.N.Y.2004) (quoting ABA Comm. on Prof'l Ethics and Grievances, Formal Op. 415 (September 8, 1999)).

■ Upon consideration, the court holds, that for the purpose of this matter, the substantial relationship prong of the disqualification motion is met. In this vein, the court agrees with the recent decision in *Lott*, 2004 WL 2980193 (S.D.N.Y. 2004). As here, the issue in *Lott* was whether Heck, as an attorney for the Binder Firm, should be disqualified from representing a plaintiff in litigation against a former client of the DelMauro Firm—in that case, First Unum Life Insurance Company ("First Unum"). Analogizing the role played by Heck with respect to First Unum to that of in-house counsel, the court in *Lott* noted that Heck spent several years as a partner at the DelMauro firm and billed hundreds of hours representing First Unum. It was further noted that Heck had developed an "inside" understanding of First Unum's "most confidential legal tactics" in insurance coverage cases, such that the "clear appearance of impropriety" made satisfaction of the substantial relationship test a "no brainer." *Lott*, 2004 WL 2980193 * 3.

While the number of cases in which Heck represented Continental is not as great as those in which he represented First Unum, the court reaches the same conclusion as in *Lott*. There is no question but that Heck gained the same type of information regarding Continental as gained in his representation of First Unum. While Heck might not be forever barred from representing Plaintiffs with interests adverse to Continental, he should be barred in this matter.

It is particularly important that Heck be barred in this case because it was commenced prior to the date upon which he left the DelMauro Firm. While Heck denies that he reviewed any correspondence, confidential or otherwise, with respect to this lawsuit, the issue with respect to the third disqualification element is access to information, rather than the content of information that can be proven to have been actually conveyed. *Miroglio,* 340 F.Supp.2d at 512. Given the fact that Heck was a partner in the DelMauro Firm while that firm was representing Continental on this matter, the court holds that the final element of the disqualification standard is met.

## III. *The Binder Firm is Also Disqualified*

 There is no question but that the disqualification of Heck from representing Plaintiff also results in the disqualification of the Binder Firm. It is well settled that the knowledge of a single attorney within a firm is to be imputed to the entire firm. *Lott,* 2004 WL 2980193 * 4; *Miroglio,* 340 F.Supp.2d at 514; *Blue Planet Software, Inc. v. Games Internat'l., LLC,* 331 F.Supp.2d 273, 278 (S.D.N.Y.2004); *Arifi,* 290 F.Supp.2d at 351. Although Heck argues that this is an appropriate case for implementation of a shielding procedure, there is no evidence that the Binder Firm has made any effort to utilize that procedure in this case and it is too late to employ that procedure at this time. *Accord Blue Planet,* 331 F.Supp.2d at 278 (presumption of shared confidences rebutted only if ethical screen has been "established from the first moment that conflicted attorney transferred to the firm, or at a minimum when the firm first received actual notice of the conflict.") (citation omitted).

## CONCLUSION

For the foregoing reasons, the motion of Continental Casualty Company to disqualify Peter J. Heck and the law firm of Binder and Binder from representing Plaintiff is granted. Plaintiff is granted sixty days from the date of this memorandum and order in which to engage different counsel or advise the court of her decision to proceed *pro se.* Although Binder and Binder may no longer represent Plaintiff, the firm is directed to contact Plaintiff for the purpose of advising her of the court's decision in this matter.

SO ORDERED.