**Lumnije ARIFI, as Administratrix of the Estate of Bajram Arifi Plaintiff,**

v.

**DE TRANSPORT DU COCHER, INC. and Karol Kubicki, Defendants.**

**Lumnife Arifi, as Administratrix of the Estate of Bajram Arifi Plaintiff,**

v.

**Great Dane Trailers, Inc., et al., Defendants.**

**Nos. 01–CV–5569 (ILG), 03–CV–1275 (ILG).**

United States District Court, E.D. New York.

Nov. 13, 2003.

Phyllis E. Spisto, Hicksville, NY, for Plaintiff.

David Alexander Abrams, Strongin, Rothman & Abrams, LLP, New York City, for Defendants.

### MEMORANDUM & ORDER

GLASSER, District Judge.

Before the Court is the motion of Defendant Transport du Cocher, Inc. ("Coachman") to disqualify the firm of Lester

Schwab Katz & Dwyer, LLP from representing Defendant CRA Trailers, Inc. ("Great Dane"). For the reasons that follow, Coachman's motion to disqualify is granted.

## FACTUAL BACKGROUND

This motion arises out of an action for wrongful death brought by Lumnije Arifi ("Plaintiff") against Coachman and Great Dane. On December 9, 2000, Plaintiff's deceased husband, Bajram Arifi ("Plaintiff's decedent" or "decedent"), sustained serious injuries when his car struck the rear of a parked tractor-trailer on Woodhaven Boulevard in Queens, New York. (Abrams Aff. Ex. J, Pl. Compl. against Great Dane ¶ 46.) The tractor-trailer was operated by Coachman, (Abrams Aff. ¶ 3); the trailer and its rear-impact safety bar were allegedly manufactured by Great Dane, (Pl. Compl. against Great Dane ¶ 43). Plaintiff's decedent died two days after the accident from the injuries he sustained. (Abrams Aff. ¶ 3.)

In July 2001, Plaintiff instituted an action in the Supreme Court of Queens County against Coachman, alleging that decedent's injuries and death were caused by Coachman's carelessness, negligence, and recklessness. (Abrams Aff. Ex. C, Pl. Compl. against Coachman ¶ 8.) Coachman later removed the action to the United States District Court for the Eastern District of New York. (Abrams Aff. ¶ 12.)

In December 2002, Plaintiff filed an action in the Supreme Court of Queens County against Great Dane, the manufacturer of the tractor-trailer, alleging that a dangerous and defective condition in the rear-impact safety bar caused the decedent's injuries and death. (Abrams Aff. Ex. E, Pl. Summons with Notice.) Great Dane, in turn, removed this action to the United States District Court for the Eastern District of New York. (Abrams Aff.

Ex. F, Notice of Removal.) On March 17, 2003, Magistrate Judge Chrein directed that the two actions be consolidated for discovery purposes. (Abrams Aff. ¶ 15.)

*History of LSKD's Involvement with Coachman*

After the accident, Plaintiff retained attorney Phillis Spisto, Esq. ("Spisto") to represent Plaintiff's interests against those involved in the accident. (Abrams Aff. ¶ 4.) After learning of the accident but before any lawsuits were initiated, Coachman, through its insurer, Markel Insurance Company of Canada ("Markel"), also sought legal representation. (Sabourin Aff. ¶ 4.) Anticipating litigation, Markel undertook various investigations, including taking statements from the driver of the tractor-trailer and a principal of Coachman. (Sabourin Aff. ¶ 4.) Eventually, Markel received a letter of representation from Spisto, along with a request for pre-suit discovery. (Sabourin Aff. ¶¶ 5, 6.) In response, Markel contacted Lester Schwab Katz & Dwyer, LLP ("LSKD") to represent and defend the interests of Coachman, Markel's insured. (Sabourin Aff. ¶ 7.)

On June 14, 2001, Charles Sabourin ("Sabourin"), a senior claims representative for Markel, perhaps with several other Markel employees, spoke by telephone with Lawrence R. Green, Esq. ("Green"), an LSKD partner. (Green Aff. ¶ 3; Sabourin Aff. ¶ 9.) Accounts differ as to the exact content of that conversation. According to Green, during that conversation, Markel merely provided him with some basic information about the underlying accident and requested that he "get Ms. Spisto off Markel's back." (Green Aff. ¶ 3.) Sabourin, however, recalls discussing more during that conversation, including the facts and findings that resulted from Markel's investigations, the substance of Plaintiff's allegations, and his theories for

defending Coachman. (Sabourin Aff. ¶ 9.) Green and Sabourin agree that Markel directed Green to contact Spisto regarding her requests for pre-suit discovery. (Green Aff. ¶ 4; Sabourin Aff. ¶ 9.)

Green contacted Spisto on that day and requested that she have no further contact with Markel or Coachman regarding the accident. (Green Aff. ¶ 4.) Green followed up this conversation with a letter to Spisto dated June 14, 2001, which stated that Green "[would] be representing the interests of [Markel] and its insureds with regard to the accident." (Green Aff. Ex. A.) Also on that day, Markel sent a fax to Green, which indicated that Green should contact Spisto and that Markel would send Green the claims investigation file. (Abrams Aff. Ex. B.)

Green was out of the office for the next several days, during which time the file arrived. (Green Aff. ¶¶ 6, 7.) Coachman asserts that the claims investigation file sent to Green included the following: (a) the results of Markel's investigation into the accident; (b) the insured's privileged statement to Markel investigators; (c) the privileged statement of the driver provided to Markel investigators; (d) information obtained from non-party witnesses involved in the post-accident repair of the trailer; (e) external investigation reports; and (f) Markel's internal notes and memoranda containing the adjusters' conclusions, impressions, and analysis of (1) Plaintiff's asserted claims against Coachman, (2) theories of defense for Coachman, and (3) strategies for defense of the claim. (Sabourin Aff. ¶ 8.)

When Green returned to the office on June 25, 2001, he received a message from Sabourin, requesting that the claims investigation file be returned to Markel.

(Green Aff. ¶ 7.) Green maintains that he did not read the file, does not recall opening it, and returned it immediately as requested by Sabourin. (Green Aff. ¶ 7.) At that point in time, both parties considered LSKD's representation to be terminated. (Green Aff. ¶ 7; Sabourin Aff. ¶ 10.) Markel later retained the firm of Strongin, Rothman, and Abrams to defend Coachman against Plaintiff's claims. (Sabourin Aff. ¶ 10.)

After Plaintiff instituted its second suit in state court, Great Dane, the Defendant in that suit, retained LSKD to assist in its defense.[1] LSKD attorneys Harold Lee Schwab, Esq. ("Schwab") and Natasha Nordahl, Esq. ("Nordahl") were and continue to be primarily responsible for the Great Dane defense. Great Dane filed an answer to Plaintiff's complaint and with it asserted a cross-claim against Coachman, alleging that Coachman's negligence, breach of contract, obligation, or warranty caused Plaintiff's damages and that Great Dane is entitled to indemnification from Coachman. (Abrams Aff. Ex. K, Answer ¶¶ 39, 40.)

Green maintains that he has never spoken with Schwab or Nordahl about the earlier representation of Coachman and has not read any of the papers prepared by LSKD for the defense of Great Dane. (Green Aff. ¶ 9.) In fact, Schwab asserts that neither he nor Nordahl would have known of the potential conflict but for Coachman's bringing it to their attention. (Schwab Aff. ¶ 9.) Aside from his assertion that he has had no involvement in the Great Dane defense, Green makes no claims about his general interactions with Schwab or Nordahl.

---

1. At some point prior to instituting suit against Great Dane, Plaintiff terminated Spisto and retained the firm of Antin, Erlich, and Epstein, which continues to represent Plaintiff.

After Coachman discovered the potential conflict, there followed some communication between Abrams and Green regarding LSKD's former involvement with Markel. (Abrams Aff. ¶ 16.) Coachman refused to waive any conflict (Abrams Aff. ¶ 17), and LSKD continued to insist that no conflict existed (Abrams Aff. Ex. I). As such, Coachman now moves to disqualify LSKD from representing Great Dane.

## DISCUSSION

■ In this Circuit, the American Bar Association Code of Professional Responsibility ("ABA Code") provides guidelines for the professional conduct of the bar. *Mitchell v. Metro. Life Ins. Co., Inc.*, 2002 WL 441194, at \*3 (S.D.N.Y. March 21, 2002); *see also* Local Civil Rule 1.5 (grounds for discipline include conduct violative of the New York State Lawyer's Code of Professional Responsibility). Even where, as here, subject matter jurisdiction is based upon diversity of citizenship, "[e]thical standards imposed upon attorneys in federal court are a matter of federal law." *County of Suffolk v. Long Island Lighting Co.*, 710 F.Supp. 1407, 1413–14 (E.D.N.Y.1989) (quoting *Cord v. Smith*, 338 F.2d 516, 524 (9th Cir.1964), *clarified*, 370 F.2d 418 (9th Cir.1966) (holding that federal law applies even in diversity action where state's substantive law controls)).

The provisions of the ABA Code applicable here are Canons 4 and 9, which state that a lawyer "should preserve the confidences and secrets of a client" and "should avoid even the appearance of professional impropriety." ABA Code (1980), *at* http://www.abanet.org/cpr/ethics/mcpr.pdf; *NCK Org. Ltd. v. Bregman*, 542 F.2d 128,

130 n. 2 (2d Cir.1976). The ABA Code's Disciplinary Rules provide more specific guidance on the manner in which an attorney must treat client confidences:

Except when permitted under DR 4–101(C),[2] a lawyer shall not knowingly:

1. Reveal a confidence or secret of a client.

2. Use a confidence or secret of a client to the disadvantage of the client.

3. Use a confidence or secret of a client for the advantage of the lawyer or of a third person, unless the client consents after full disclosure.

N.Y.Code of Prof. Resp. § DR 4–101(B) (McKinney 2003).

■ The duty of loyalty that runs from an attorney to a client does not necessarily end when the formal attorney-client relationship ends, *In re "Agent Orange" Prod. Liab. Litig.*, 800 F.2d 14, 17 (2d Cir.1986), because the attorney owes a "duty of continuing loyalty" to his former client, *Id.* (quoting *In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 161 (3d Cir.1984)). The ABA Code also addresses the duties owed by an attorney to a former client:

[A] lawyer who has represented a client in a matter shall not, without the consent of the former client after full disclosure:

1. Thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client.

2. Use any confidences or secrets of the former client except as permitted by DR 4–101(C) or when the confi-

---

**2.** DR 4–101(C) outlines several situations in which a lawyer may reveal confidences of a client, including when it is required by a court order, necessary to prevent a crime, or necessary for the lawyer to defend himself against an accusation of wrongful conduct. None of these exceptions apply here.

dence or secret has become generally known.

N.Y.Code of Prof. Resp. § DR 5–108(A) (McKinney 2003). The rule against successive representations addresses "the unfair advantage that a lawyer can take of his former client in using adversely to that client information communicated in confidence in the course of the representation." *Mitchell,* 2002 WL 441194, at * 4.

■ In *Evans v. Artek Sys. Corp.,* 715 F.2d 788, 791 (2d Cir.1983), the Court of Appeals held that an attorney may be disqualified from representing a client in a particular case if:

(1) the moving party is a former client of the adverse party's counsel;

(2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and

(3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

This "high standard of proof on the part of one who seeks to disqualify his former counsel" is necessitated by "a client's right freely to choose his counsel—a right which of course must be balanced against the need to maintain the highest standards of the profession." *Gov't of India v. Cook Indus., Inc.,* 569 F.2d 737, 739 (2d Cir. 1978). Furthermore:

A client whose attorney is disqualified incurs a loss of time and money in being compelled to retain new counsel who in turn have to become familiar with the prior comprehensive investigation which is the core of modern complex litigation. The client moreover may lose the benefit of its longtime counsel's specialized knowledge of its operations.

*Id.* at 739 (internal citations omitted). For this reason, "disqualification has been granted or approved only when the issues involved have been identical or essentially the same." *Id.* at 740 (internal citations omitted). When deciding a motion for disqualification, the Court must resolve any doubts in favor of disqualification. *Crudele v. New York City Police Dep't,* 2001 WL 1033539, at *2 (S.D.N.Y. Sept. 7, 2001).

■ The first element of the *Evans* test requires the Court to find that Coachman is a former client of LSKD and that Great Dane and Coachman are adverse parties. *See Evans,* 715 F.2d at 791. LSKD argues that its representation of Coachman was short-lived and limited to "getting Spisto off Markel's back." Nevertheless, Coachman was a client of LSKD, as Green made clear in his letter to Spisto where he wrote, "I will be representing the interests of Markel Insurance Company of Canada and its insureds with regard to the accident." (Green Aff. Ex. A.) Although the duration of the representation turned out to be limited, both Green and Coachman apparently understood that Coachman was a client of LSKD.

Furthermore, while LSKD argues that cross-claims are brought as a matter of course, Great Dane and Coachman are nevertheless adverse parties. LSKD clearly asserted in its answer to Plaintiff's complaint that Coachman's negligence or breach caused the damages sustained by Plaintiff. As a practical matter, if a jury finds Coachman and Great Dane liable for Plaintiff's injuries, Coachman and Great Dane will each likely assert that the other was primarily responsible for the damages. In that respect, Coachman and Great Dane are in adverse positions and will continue to remain so as the litigation progresses.

The second element of the *Evans* test, that there is a substantial relationship be-

tween the subject matter of LSKD's prior representation of Coachman and the issues in the present lawsuit against Great Dane, is clearly met here. *See Evans*, 715 F.2d at 791. LSKD's prior representation of Coachman concerned pre-suit discovery sought by Plaintiff in connection with the accident. LSKD's current client, Great Dane, is being sued by the same Plaintiff with regard to the same accident and has asserted a cross-claim against Coachman to determine liability. The substantial relationship test does not depend on the amount of work performed or the duration of the representation, but on the similarity of issues in the former and present representations. Here, the issues are identical and, thus, the substantial relationship element is met.[3]

■ Finally, the *Evans* test requires the Court to find that Green had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of Coachman. *See Evans*, 715 F.2d at 791. The finding above—that there is a substantial relationship between the two representations—creates a rebuttable presumption that Coachman imparted to Green confidential information relevant to the present suit. *See USFL*, 605 F.Supp. at 1461. Coachman is not required to prove that Green actually had access to confidential information while representing Coachman but only that he was *likely* to have had such access. *Gov't of India*, 569 F.2d at 740 (explaining

that such a requirement would "put the former client to the Hobson's choice of either having to disclose his privileged information ... or having to refrain from the disqualification motion altogether").

While there is no reason to doubt Green's claim that he does not remember any confidential information, the Court nevertheless finds that he was likely to have had *access* to such information during the short period of representation. *See Schwed v. Gen. Elec. Co.*, 990 F.Supp. 113, 117 n. 2 (N.D.N.Y.1998) (holding in case where attorney claimed he did not possess confidential information and did not recall any discussions regarding the case, that the third prong of the *Evans* test was nevertheless met because there was a likelihood that attorney had access to confidential information). Green's admission that he returned the claims investigation file to Coachman demonstrates that he was, at one time, in physical possession of it.[4] Furthermore, Green was a party to a conversation with several employees of Markel regarding the accident.

Although Green's representation of Markel was limited, he had at least enough information about the accident and Coachman's relationship to it to contact Plaintiff's attorney regarding the matter. This access might give LSKD an unfair advantage in its representation of Great Dane. As the court in *Mitchell* explained,

Client confidences are not so inert as to limit their usefulness to defined legal

---

3. According to LSKD, the substantial relationship element cannot be met because Plaintiff instituted her lawsuit against Coachman after LSKD's representation of Coachman had ended. The articulation of the standard for disqualification by the *Evans* court makes clear, however, that the subject matter of the prior representation need not involve *litigation*. *See USFL*, 605 F.Supp. at 1459 (holding that law firm's prior representation of client required its disqualification even where the former representation "entailed not

litigation but general background legal work"). That LSKD represented Coachman before Plaintiff filed her lawsuit against Coachman does not change the result that the prior and current representations are substantially related.

4. Although Green claims to have never read the file, it is unclear whether any other LSKD employees may have opened or read it.

disciplines or practice areas. They are fungible, and once disclosed can be applied by an experienced lawyer in ways too numerous to anticipate at this stage of the proceeding.... "The dynamics of litigation are far too subtle, the attorney's role in that process is far too critical, and the public's interest in the outcome is far too great to leave room for even the slightest doubt concerning the ethical propriety of a lawyer's representation in a given case." 2002 WL 441194, at *8 (quoting *Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562, 571 (2d Cir.1973)).

*Imputing Disqualification to LSKD*

■ The foregoing analysis merely establishes that Green is disqualified from representing Great Dane in this action. The ABA code further provides that, "if a lawyer is required to decline employment or to withdraw from employment under a Disciplinary Rule, no partner, or associate, or any other lawyer affiliated with him or his firm, may accept or continue such employment." *Cheng v. GAF Corp.*, 631 F.2d 1052, 1056 (2d Cir.1980), *vacated on other grounds*, 450 U.S. 903, 101 S.Ct. 1338, 67 L.Ed.2d 327 (1981) (disqualifying law firm in case where associate had been involved in the same matter while employed at a legal services office that represented the adverse party);[5] *see also* N.Y.Code of Prof. Resp. § DR 5–105(D) (McKinney 2003) ("[w]hile lawyers are associated in a law firm, none of them shall knowingly accept or continue employment when any one of them practicing alone would be prohibited from doing so"). The ABA Code's presumption that client confidences are shared among attorneys in a law firm may be rebutted if "(1) the attorney is effectively screened, *i.e.* an adequate 'Chinese Wall' is created, and (2) there is no further appearance of impropriety." *Crudele*, 2001 WL 1033539, at *3.

LSKD does not claim to have erected a Chinese Wall between Green and the rest of the firm. Although Green is not "personally involved" in the Great Dane defense, "he is a member of a relatively small firm.... [and] it is unclear to us how disclosures, admittedly inadvertent can be prevented throughout the course of this representation." *Cheng*, 631 F.2d at 1058. Because Green was not screened from the rest of the firm, LSKD has failed to rebut the presumption that confidences were shared. Imputing the disqualification to the entire firm will prevent the possibility of trial taint and any appearance of impropriety.

**CONCLUSION**

Coachman has established that it is a former client of LSKD, the current counsel to Great Dane, and that Coachman and Great Dane are adverse parties; that there is a substantial relationship between the subject matter of that prior representation and the issues in the present lawsuit; and that Green was likely to have had access to privileged information in the course of his representation of Coachman. LSKD has failed to rebut the presumption that those confidences were shared within LSKD. For these reasons, Defendant Coachman's motion to disqualify the firm of Lester Schwab Katz & Dwyer from representing Defendant Great Dane is granted.

SO ORDERED.

---

5. Although the Supreme Court vacated *Cheng* on procedural grounds, district courts continue to look to the case for guidance and the Second Circuit appears to consider its reasoning sound. *Crudele*, 2001 WL 1033539, at *3 n. 3 (citing *Baird v. Hilton Hotel Corp.*, 771 F.Supp. 24, 27 n. 1 (E.D.N.Y.1991)).