**John HICKMAN, Plaintiff,**

v.

**BURLINGTON BIO–MEDICAL CORPORATION, Micropel Corporation, Atomergic Chemetals Corp. and Amerol Corp., Defendants.**

**No. CV 04–5468.**

United States District Court, E.D. New York.

May 17, 2005.

Wolfe & Yukelson PLLC, By Bruce Yukelson, Esq., Port Washington, NY, for Plaintiff.

Silverman Perlstein & Acampora LLP, By Robert J. Ansell, Esq., Jericho, NY, for Defendants.

### MEMORANDUM AND ORDER

WEXLER, District Judge.

This is a diversity action commenced by Plaintiff John Hickman ("Hickman" or "Plaintiff") to recover amounts allegedly due to him pursuant to a contract of employment. Presently before the court is the motion of Defendants Burlington Bio-Medical Corporation ("Burlington"), Micropel Corporation ("Micropel"), Atomergic Corporation ("Atomergic"), Chemetals Corp. ("Chemetals") and Amerol Corp. ("Amerol") (collectively "Defendants") to disqualify Plaintiff's counsel from further representation of Plaintiff in this matter. For the reasons set forth below, the motion is denied.

### BACKGROUND

I.  *The Parties' Relationship and the Allegations of the Complaint*

The allegations of Plaintiff's complaint, construed as true at this juncture, are as follows. Hickman is a resident of the State of Massachusetts and Burlington is located in this District. In May of 1997, Hickman entered into an employment agreement (the "Agreement") with Burlington. While the Agreement does not state Hickman's title, it refers to Hickman as a "key employee," and Hickman alleges that in 2001 he was named president of Micropel, a corporate affiliate of Burlington. The Agreement sets forth various provisions regarding salary, bonus and

profit sharing and states that it is binding upon Burlington's successors and assigns.

Hickman alleges that in 2001 he performed work for Micropel. According to Plaintiff, the commissions to which he was entitled were set initially at 1% of sales, but were thereafter increased to 2%, and later to 2.5%. Plaintiff alleges that between January of 2001 and April of 2004, he became entitled to commissions in the amount of $224,169.29, of which only $68,000 has been paid.

The complaint states that in April of 2004, the business of Micropel, which is alleged to have constituted substantially all of the assets of Burlington, was transferred to a company known as Troy Corp. Plaintiff alleges that this transfer constituted a "change in control" of the ownership of Burlington, within the meaning of the Agreement. According to Plaintiff, this change in control entitled him to payment of 5% of Burlington's gross proceeds from the transfer, an amount stated to be in excess of $300,000, which has not been paid. Plaintiff further alleges entitlement to 5% of any future earnouts received by Burlington from Troy.

Plaintiff's complaint alleges these several breaches of the Agreement and seeks contractual damages as well as damages and attorneys fees pursuant to the New York State Labor and Debtor and Creditor laws.

## II. *Plaintiff's Counsel and the Prior Representation of Defendants*

While the parties take opposing positions regarding certain specific facts, those that follow are uncontroverted.

Plaintiff is represented here by the law firm of Wolfe and Yukelson and, more specifically, by Bruce Yukelson ("Yukel-son"). Prior to his representation of Plaintiff, Yukelson represented certain of the corporate defendants on four different occasions—in 1987, 1992, 1994, 1995. Specifically, Yukelson represented Burlington in 1987 in an arbitration. That arbitration involved a breach of contract involving a purchase of goods from Burlington. Yukelson represented Chemetals in 1992, in an action against Federal Insurance Company. That action involved a claim alleging the insurer's failure to make payment on a burglary claim.

In 1994, Yukelson represented Amerol in a state court action entitled *American Roland Chemical Corp. v. Fixell,* (the "Fixell Action"). One year later, Yukelson again represented Amerol in an action entitled *Medimpex Northamerica, Inc. v. American Roland Chemical Corp.* (the "Medimpex Action"). Both the Fixell Action and the Medimpex Action involved promissory note collections. *Fixell* was commenced by Amerol. In *Medimpex,* Yukelson defended Amerol against an attempt to collect on a note.

Defendant has submitted an affidavit alleging Yukelson's involvement in "corporate governance issues." Specifically, a Burlington employee has submitted an affidavit stating that Yukelson's firm "provided general advice to the corporate defendants and the corporate officers of those defendants for a period spanning at least ten years." During that time period, counsel is alleged to have become aware of "intimate, confidential and corporate information" of Defendants.

Yukelson's affidavit in opposition to the motion denies that he provided corporate advice to Defendants and provides the name of a different attorney, Samuel Weiss, Esq., who is alleged to have served as corporate counsel to Defendants from

1987 through 2002.[1]  While Defendants assert that Yukelson "may have" drafted the employment agreement that is the subject of this lawsuit, that allegation is denied by Yukelson who has submitted a document supporting that denial.  The court credits Yukelson's assertion that it was attorney Weiss, and not Yukelson, who drafted the Agreement.

With this factual background in mind, the court turns to consider the relevant legal standards and the merits of the motion.

## DISCUSSION

### I.  Disqualification: General Principles

■ The standards for the granting of a motion to disqualify counsel are well settled.  An attorney will be disqualified from representing a client where: (1) the party seeking disqualification is a former client of the attorney sought to be disqualified; (2) there exists a substantial relationship between the subject matter of the pending case and counsel's prior representation of the client, and (3) the attorney sought to be disqualified had access, or was likely to have access, to relevant privileged information in the course of his prior representation of the moving client.  *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983); *see Guerrilla Girls, Inc. v. Kaz,* 2004 WL 2238510 * 1 (S.D.N.Y.2004); *Arifi v. de Transport du Cocher, Inc.,* 290 F.Supp.2d 344, 349 (E.D.N.Y.2003).[2]

■ The importance of preserving client confidences requires that all doubts be resolved in favor of disqualification. *Wieme v. Eastman Kodak Co.,* 2004 WL 2271402, at *2 (S.D.N.Y.2004); *Arifi,* 290 F.Supp.2d at 349.  Nonetheless, because disqualification interferes with a party's right to chose counsel, and motions to disqualify are often interposed for tactical reasons, the Second Circuit disfavors such motions.  *Evans,* 715 F.2d at 791–92; *King v. Fox,* 2005 WL 741760 *2 (S.D.N.Y. 2005); *Matthews v. LeBoeuf, Lamb, Greene & MacRae,* 902 F.Supp. 26, 28 (S.D.N.Y.1995) (citation omitted).  Accordingly, motions to disqualify are subject to a high burden of proof.  *Evans,* 715 F.2d at 791; *Gov't. of India v. Cook Indus.,* 569 F.2d 737, 739 (2d Cir.1978); *Guerrill Girls,* 2004 WL 2238510 * 1; *Arifi,* 290 F.Supp.2d at 349; *Cleverly Minded Limited v. Anthony Sicari Apparel Group Indus., Inc.,* 2003 WL 161317 *2 (S.D.N.Y. 2003).

■ The appearance of impropriety, standing alone, is insufficient to grant a motion to disqualify.  *United States Football League v. National Football League,* 605 F.Supp. 1448, 1452 (S.D.N.Y.1985) (hereinafter *"USFL ")*; *see Peacock Holdings, Inc. v. Massachusetts Mut. Life Ins. Co.,* 1996 WL 285435 *8 (E.D.N.Y.1996) (courts should be "quite hesitant" to disqualify on this ground) (citation omitted).  Instead, the issue is whether there is a "real risk that the trial will be tainted."  *Id.; King,* 2005 WL 741760 *8; *In re Polaroid Erisa Litig.,* 354 F.Supp.2d 494, 497 (S.D.N.Y.2005).  Speculation regarding the divulging of client confidences will not suffice to grant a motion to disqualify. *Peacock Holdings.,* 1996 WL 285435 at *8.

---

**1.**  Weiss is nowhere alleged to have been associated with Yukelson's law firm and the court therefore assumes that his practice is unaffiliated with that of Yukelson's firm.

**2.**  While federal law governs this matter, *Arifi,* 290 F.Supp.2d at 348, the New York Rules, as well as the ABA Rules of Professional Conduct and the ABA Model Code of Professional Responsibility provide important guidance. *See Blue Planet Software, Inc. v. Games International., LLC,* 331 F.Supp.2d 273, 275 (S.D.N.Y. 2004); *Arifi,* 290 F.Supp.2d at 348.

## II. Disposition of the Motion

### A. Former client

■ There is no dispute that certain of the various related Defendant corporations were clients of Yukelson prior to the commencement of this lawsuit. Thus, the first prong of the test for disqualification—that the party seeking disqualification is a former client of the attorney sought to be disqualified—has been met.

### B. Substantial Relationship

■ The substantial relationship test allows the court to assume that client confidences, relevant to the current litigation, were revealed during the course of the earlier representation. *Mitchell v. Metropolitan Life Ins. Co., Inc.*, 2002 WL 441194 *5 (S.D.N.Y.2002); quoting, *Cheng v. GAF Corp.*, 631 F.2d 1052, 1056 (2d Cir.1980); *Peacock Holdings.*, 1996 WL 285435 at *8. The test is met "if the relationship between issues in the prior and present cases is 'patently' clear[,] ... 'identical' or 'essentially the same.'" *Government of India*, 569 F.2d at 739–40 (internal citations and quotations omitted); *Arifi*, 290 F.Supp.2d at 349; *Peacock Holdings*, 1996 WL 285435 at *8.

■ Where an attorney's representation of a client is general in nature, he may be disqualified from representing an adverse party in later litigation, but only if the later litigation puts at issue the client's entire background. *USFL*, 605 F.Supp. at 1459; *Polaroid*, 354 F.Supp.2d at 498; *see also Cleverly Limited*, 2003 WL 161317 at * 5. If, on the other hand, the client's background is not at issue, an attorney's knowledge of the client's general business and financial background is not a proper basis for disqualification. *USFL*, 605 F.Supp. at 1460.

■ Where, as here, the prior representation is limited to litigation, the issue is whether the material facts in the prior litigations are the same as those involved in the present representation. *USFL*, 605 F.Supp. at 1459. If there is present a common factual question, the substantial relationship test is satisfied. *Id.; see Guerrill Girls*, 2004 WL 2238510 at * 3 ("it is the congruence of factual matters ... that establishes a substantial relationship") (citation omitted). Where the only allegation of similarity is the attorney's alleged insight into the former client's "general 'litigation thinking,'" similarity is not established. *Vestron v. National Geographic Society*, 750 F.Supp. 586, 595 (S.D.N.Y. 1990); *see also Wieme*, 2004 WL 2271402 *6; *Matthews* 902 F.Supp. at 31. As noted by the court in *Vestron*, adoption of such a standard would mandate disqualification in "virtually every instance of successive representation" which "clearly is not the law." *Id.*

■ Application of the substantial relationship test leads the court to conclude that there exists no such relationship between the cases in which Yukelson represented certain Defendants and the present matter. As noted above, Yukelson served as litigation counsel in four matters. The factual scope of each matter is clearly defined and, in each case, narrow.

The two cases involving Amerol were collection matters. The court can scarcely envision a narrower factual case than one involving note collection. At issue only is whether the note was appropriately made and whether there was payment or any legal excuse for failure to do so. Also narrow in scope are the remaining two matters in which Yukelson served as litigation counsel. The case involving Burlington was an arbitration of a breach of contract claim involving the purchase of goods from Burlington. Factually, that case involved only the particular goods and con-

tract at issue. The factual issue in the final action to be considered was whether or not the defendant insurer was obligated to make payment on a burglary claim.

The case presently before the court alleges the failure of Defendants to pay Plaintiff compensation he asserts to be due under the Agreement. At issue is whether Defendants breached their contract with Plaintiff. Specific factual issues for trial will likely include testimony regarding the parties' intent, sales and payments made, and whether a transfer of ownership, within the meaning of the Agreement, was effectuated.

None of the cases in which Yukelson served as counsel bears any factual relationship, much less any "substantial" relationship, to these issues. Each of the prior cases were litigated prior to the commencement of this lawsuit. None had anything whatever to do with the employment of Plaintiff or his relationship with Defendants. That Yukelson may have met certain of Defendant corporate officers in the course of his earlier representation (none of whom have been named by Defendants) does nothing to strengthen the allegation of substantial relationship.

At best, Defendants raise nothing more than a possible claim of the appearance of impropriety. As noted above, such a claim cannot, standing alone, support a grant of a motion to disqualify. In any event, the claim is particularly weak here because Yukelson has not represented any of the Defendants in ten years and there may well have been a change in corporate officers since that time. *Accord Wieme*, 2004 WL 2271402 *6 (while "temporal distance alone may not suffice to defeat a motion to disqualify, certainly it has some bearing on whether counsel was likely to have obtained *relevant* confidential information during the course of the prior representa-

tion that affects current litigation") (emphasis in original).

Defendants' claim is weakened further by the fact that Yukelson's current client is the former President of Micropel. To the extent that anyone on Plaintiff's team has knowledge of Defendants' internal corporate operation, that person would be Plaintiff himself, who has been described as a "key employee" since entering into the Agreement in 1997.

For the foregoing reasons, the court holds that Defendants have fail to show the substantial relationship necessary to support a motion to disqualify counsel.

## C. *Access to Privileged Information*

To the extent that the court need reach the third issue, *i.e.*, whether or not Yukelson had, or was likely to have, access to relevant privileged information in the course of his prior representation of Defendants, the court holds that no such showing has been made. The failure to prove a substantial relationship between the earlier and present litigation destroys any presumption of relevant shared confidences and Defendants' papers point to no particular instance of any such confidence. Indeed, the affidavit submitted by Defendants makes only vague and general allegations of the sharing of "intimate confidences" and the "intimate involvement in corporate governance issues." Given the limited nature of Yukelson's prior representation, the lack of particularity is not surprising. In any event, the nature of the showing made by Defendants counsels further against the granting of this motion. *See Wieme*, 2004 WL 2271402 *2 (noting Second Circuit's "admonition that courts should avoid 'paint[ing] with broad strokes in this area' ") (citation omitted).

### CONCLUSION

For the foregoing reasons, Defendants' motion to disqualify Bruce Yukelson from representing Plaintiff is denied. The parties are directed to contact the Magistrate Judge assigned to this matter for the purpose of entering into an appropriate discovery schedule. The Clerk of the Court is directed to terminate the motion.

SO ORDERED.